MECHMETALS CORPORATION, a California corporation, Mechmetaltronics, Inc., a California corporation, Plaintiffs,

v.

TELEX COMPUTER PRODUCTS, INC., an Oklahoma corporation; Telex, Inc., a Delaware corporation; Daniel R. O'Neill, an individual; and Gary Bobleter, an individual, Defendants.

No. CV 80–00427–AAH (PX).

United States District Court, C. D. California.

July 6, 1981.

Nicholas & Cairns and J. Thomas Cairns, Jr., Los Angeles, Cal., for plaintiffs.

Mullen & Stabile and Gary D. Stabile, Pasadena, Cal., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, Chief Judge.

The above-entitled cause came on regularly for trial on June 8, 1981 before the Honorable A. Andrew Hauk, United States District Judge, sitting without a jury, jury having been duly waived.

Plaintiff Mechmetals Corporation appeared by its attorneys of record, Nicholas & Cairns and J. Thomas Cairns, Jr., and Defendant Telex Computer Products, Inc., appeared by its attorneys of record, Mullen & Stabile and Gary D. Stabile.

Said cause having been heard, evidence both oral and documentary having been introduced and the cause having been submitted for decision, the Court being fully advised in the premises now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff Mechmetals Corporation ("Mechmetals") is a California corporation engaged in the business of manufacturing and selling lightweight metal mechanical parts.

2. Defendant Telex Computer Products, Inc., ("TCP") is an Oklahoma corporation engaged in the business of manufacturing and selling computer peripheral equipment.

3. In about 1975, Daniel R. O'Neill ("O'Neill") and Alan Painter ("Painter") and other persons formed Gulliver Technology Corporation, a California corporation ("Gulliver").

4. In early 1975, O'Neill saw a lightweight metal hollow structured bellows which he learned had been manufactured by Mechmetals.

5. O'Neill learned that the same manufacturing process could be used to manufacture the capstan.

6. In early 1975, O'Neill and Painter met with George L. Glaeser, Jr. ("Glaeser"), the then president of Mechmetals to discuss the feasibility of Mechmetals developing and manufacturing capstans.

7. A number of meetings followed and O'Neill, Painter and Glaeser agreed to design a capstan and to use the services and facilities of Mechmetals for development of the capstan.

8. Between approximately February 1975 and December 1975, Glaeser, O'Neill and Painter actively collaborated in the invention of the capstan.

9. By late 1975, the design of the capstan was sufficiently advanced to be patented.

10. Glaeser is a highly skilled machinist possessing special expertise in the production of lightweight plated-metal mechanical parts.

11. Painter and O'Neill had no prior experience with the technology of lightweight plated-metal mechanical parts.

12. Glaeser actively collaborated in the invention of the capstan and was primarily responsible for reducing the idea to practice.

13. Mechmetals submitted billings to O'Neill, Painter and Gulliver Technology Corporation for materials and machine time used in making the capstan prototypes and was reimbursed for such billings.

14. At all times relevant to this lawsuit, Glaeser was employed exclusively by Mechmetals in the capacity of President.

15. Glaeser was a party to a written employment contract with Mechmetals which, among other things, obligated him to recognize Mechmetals' shop right in any invention conceived or perfected by him during the term of his employment.

16. On December 29, 1975, Glaeser, Painter and O'Neill filed patent applications concerning the capstan with United States Patent Office, which applications listed the three of them as co-inventors of the capstan.

17. Four patents were issued with respect to the capstan in the names of Glaeser, Painter and O'Neill, as co-inventors:

Patent No. 4,065,044 issued December 27, 1977;

Patent No. 4,132,607 issued January 2, 1979;

Design Patent No. DES 252750; and

Design Patent No. DES 252751, both issued August 28, 1979.

18. Glaeser never assigned any of the patent rights which he acquired in the capstan to Mechmetals.

19. Mechmetals has an equitable shop right in each of the patents described at paragraph 17 above.

20. In December of 1975, Glaeser, Painter and O'Neill executed written assignments of their interests in the then pending patents described at paragraph 17 above to Gulliver Technology Corporation.

21. Glaeser did not relinquish or intend to relinquish Mechmetals' right to manufacture the capstans.

22. Glaeser did not assign Mechmetals' "shop right" to Gulliver.

23. Glaeser did not have authority from Mechmetals to assign Mechmetals' "shop right" to Gulliver.

24. In January of 1977, Gulliver consummated a sale of all its assets, including the capstan patents, to TCP.

25. In January of 1977, O'Neill became a Vice President of TCP in charge of mini-tape drive production.

26. In July of 1977, O'Neill and TCP assured Glaeser that they recognized that Mechmetals owned the non-exclusive right or license to manufacture the capstans.

27. Between July of 1977 and May of 1979 Mechmetals took orders from TCP for at least 1,000 of capstans and TCP purchased all of its requirements of capstans from Mechmetals during that period.

28. In May of 1979, the commercial relationship between TCP and Mechmetals was terminated.

The foregoing Findings of Fact, insofar as they may be deemed to be Conclusions of Law, are found to be such by the Court.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1338(a).

2. Mechmetals is entitled to judgment in its favor upon the First Claim for Relief of the Complaint, to wit, declaratory relief.

3. Mechmetals has a non-exclusive shop right in the capstan.

4. Glaeser was a co-inventor of the capstan.

5. Defendants have not presented evidence sufficient to overcome the strong legal presumption that one who is identified in a patent as a joint inventor is in fact a joint inventor.

6. TCP is estopped to assert misjoinder of Glaeser as a co-inventor while maintaining the validity of its patents.

7. Glaeser's contribution to the invention of the capstan in reducing the idea to practice makes him a true co-inventor.

8. Mechmetals' shop right was not assigned to Gulliver.

9. Glaeser did not assign Mechmetals' shop right and could not do so within

the scope of his authority as President of Mechmetals.

10. Mechmetals' shop right was not and is not among Glaeser's rights in the capstan patents.

11. Mechmetals' shop right existed and exists for the life of the patents to which it relates and permits manufacture of the capstan and sales thereof to any buyer.

The foregoing Conclusions of Law, insofar as they may be deemed to be Findings of Fact, are found to be such by the Court.

Let Judgment be entered accordingly.