**CELESTRON PACIFIC, Plaintiff,**

v.

**CRITERION MANUFACTURING CO., INC. and Robert Goff, Defendants.**

**CELESTRON PACIFIC, Plaintiff,**

v.

**CRITERION MANUFACTURING CO., INC., Defendant.**

**Civ. A. Nos. 15872, N–74–276.**

United States District Court,
D. Connecticut.

Nov. 2, 1982.

F. Eugene Davis IV, Mattern, Ware, Davis & Stoltz, Bridgeport, Conn., Ira G. Grudberg, Jacobs, Jacobs & Grudberg, New Haven, Conn., Joseph F. Troy, Troy, Malin, Loveland & Letts, Los Angeles, Cal., David H. Semmes, Sharon, Pierson, Semmes, Cro-lius & Finley, Washington, D.C., for plaintiff.

J. Weston Maher, Hartford, Conn., for defendant Goff.

Peter L. Costas, Henry Ramenda, Hartford, Conn., for defendant Criterion.

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF UNITED STATES PATENT NO. 3,837,124 AND OF UNITED STATES LETTERS PATENT NO. REISSUE 28,878

ZAMPANO, District Judge.

I

On October 3, 1973, the plaintiff, Celestron Pacific ("Celestron"), commenced Civil Action No. 15,872 against the defendants Criterion Manufacturing Co., Inc. ("Criterion"), and Robert Goff, a former employee of Celestron, who was employed by Criterion. In its complaint, Celestron basically contended that confidential and trade secrets relating to the manufacture and sale of Schmidt corrector plates and mirrors, used in Schmidt telescopes and cameras, were improperly disclosed by Goff and unlawfully appropriated by Criterion. As a remedy, Celestron sought declaratory and injunctive relief and money damages.

Thereafter, on November 19, 1974, Celestron instituted Civil Action No. N–74–276 and requested injunctive and other relief based upon Criterion's alleged infringement of Celestron's United States Patent 3,837,-124 (" '124 patent") and its United States Patent 3,837,125 (" '125 patent"). Subsequently, the pleadings were amended to include a claim of infringement with respect to Celestron's United States Patent 3,889,431 (" '431 patent"), as a continuation-in-part of its earlier '125 patent. Criterion then moved for summary judgment on the '125 and '431 patents, claiming that these patents were in use in this country more than one year prior to the dates of the applications for the patents and hence the patents were invalid under the provisions of 35 U.S.C. § 102(b). The Court granted Cri-

terion's motion for partial summary judgment stating:

It is not disputed that the claims of the '431 patent are in error and do not accurately reflect the invention defined in the specification. As such, it is not a valid, enforceable patent. However, even assuming the errors are corrected as anticipated by the plaintiff through a reissue of the patent, 35 U.S.C. § 251, and '431 patent, as a continuation-in-part of the '125 patent must also be deemed to be within the statutory bar of 35 U.S.C. § 102(b) for the reasons previously advanced.

*Celestron Pacific v. Criterion Mfg. Co.*, 461 F.Supp. 603, 608 (D.Conn.1978) (Zampano, J.).

Subsequent to its motion for partial summary judgment on the '125 and '143 patents, Criterion also moved for partial summary judgment on the '124 patent entitled "Method for Making Replica Contour Blockmasters for Producing Schmidt Corrector Plates." Thereafter, a reissue of patent '124 was granted as United States Letters Patent No. Re. 29,878 (" '878 patent"). Criterion then amended and supplemented its summary judgment motion to include the '878 patent. This motion as amended is now before the Court.

## II

The language of the '124 patent describes the invention as follows:

A method for making replica contour block masters for use in producing and checking accuracy Schmidt correctors wherein a glass spindle master is ground and polished to an accurate flat. An oversize but otherwise finished Schmidt corrector plate to be duplicated which is flat on one side and figured on the other is apertured at the optical center thereof and shallow grooves ground into the corrector on the curve side. The corrector plate is placed flat side to flat spindle master surface and a thin piece of glass to constitute a replica piece is placed on the corrector plate with a vacuum drawn therebetween to conform their surfaces. The replica piece is ground and polished flat on its free upper surface. The corrector plate and replica piece are then removed from the spindle master and the replica piece alone placed flat side to flat surface of the spindle master in optical contact in a semi-permanent bond therewith and constituting together a contour block master.

Criterion in its partial summary judgment motion contends that this patent and the '878 reissue patent are invalid on the grounds that: (1) the letters patent were issued on an application under oath which improperly alleges joint inventorship under 35 U.S.C. §§ 115–116, of subject matter invented by a sole inventor; (2) that the misjoinder of inventors cannot be cured under 35 U.S.C. § 256, because the misjoinder was intentional; (3) the letters patent are invalid as having been issued to an inventive entity, which did not invent the patent; and (4) claims 4–7 of the '124 patent and claims 13–16 of the '878 reissue patent are invalid for failure to point out and define the invention and for failure to provide a description meeting the requirements of 35 U.S.C. § 112. Criterion submits that there are no genuine issues of material fact in dispute as to these grounds for invalidity. Celestron, however, vigorously opposes this contention, claiming that there are many contested facts to be resolved.

## III

The Court first addresses Criterion's contention that the '124 and '878 patents are invalid because issued on a sworn application, which improperly alleged joint inventorship under 35 U.S.C. §§ 115–116. Specifically, Criterion argues that a Mr. O'Rourke was the sole inventor of the patents in issue and that plaintiff's president, Mr. Johnson, falsely listed himself as a joint inventor in the patent application.

Section 115 states in part: "The applicant [for a patent] shall make oath that he believes himself to be the original and first inventor ...." 35 U.S.C. § 115. Section 116, in turn, provides in relevant part: "When an invention is made by two or more

persons jointly, they shall apply for patent jointly and each sign the application and make the required oath .... " 35 U.S.C. § 116. Yet, section 116 also declares that: "Whenever a person is joined in an application for patent as joint inventor through *error* ... and such error arose *without any deceptive intention* on his part, the Commissioner may permit the application to be amended .... " *Id.* (emphasis added). Similarly, section 256 states in pertinent part:

> Whenever a patent is issued on the application of persons as joint inventors and it appears that one of such persons was not in fact a joint inventor, and that he was included as a joint inventor *by error and without any deceptive intention,* the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate deleting the name of the erroneously joined person from the patent.

> . . . . .

> The misjoinder or nonjoinder of joint inventors shall not invalidate a patent, if such error can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

35 U.S.C. § 256 (emphasis added).

■ It is apparent from the provisions of both section 116 and 256 that an erroneous misjoinder of inventors can be cured if the misjoinder occurred without deceptive intent. See, e.g., *Bemis v. Chevron Research Co.,* 599 F.2d 910, 912, (9 Cir.) (innocent errors in the joinder or non-joinder of inventors can be cured under section 256), cert. denied, 444 U.S. 966, 100 S.Ct. 454, 62 L.Ed.2d 378 (1979); *P & D Sales & Mfg. Co. v. Winter,* 334 F.2d 830, 836 (7 Cir.1964) (error in patent as to joint inventor can be cured under section 256; *Azoplate Corp. v. Silverlith, Inc.,* 367 F.Supp. 711, 729 (D.Del. 1973) (where misjoinder of inventors was not made with deceptive intention, the in-

ventor entity could be corrected under section 116). Furthermore, "there is a presumption that the inventors named in an issued patent are correct" *Jamesbury Corp. v. United States,* 518 F.2d 1384, 1395 (Ct.Cl. 1975) (citing *Acme Highway Prod. Corp. v. D.S. Brown Co.,* 431 F.2d 1074 (6 Cir.), cert. denied, 401 U.S. 956, 91 S.Ct. 977, 28 L.Ed.2d 239 (1971)) and that misjoinder of inventors is a technical defense that must be proved by clear and convincing evidence. *Id.* See also *Congoleum Indus., Inc. v. Armstrong Cork Co.,* 339 F.Supp. 1036, 1055 (E.D.Pa.1972), (prima facie presumption that persons named in patent were the inventors can only be rebutted by strong, clear and convincing evidence), aff'd, 510 F.2d 334 (3 Cir.), cert. denied, 421 U.S. 988, 95 S.Ct. 1991, 44 L.Ed.2d 478 (1975). Despite this heavy evidentiary burden, Criterion argues that the Court, from the undisputed facts, can determine that there was a misjoinder of inventors and that the misjoinder was carried out with a deceptive intent.

■ Upon examining all relevant submitted materials, including the statements of material fact and the depositions of O'Rourke, Goff, Jenkins and McDonald, the Court rejects Criterion's position. In its statements of material fact Criterion alleges that O'Rourke conceived the idea of creating a die block master with a desired inverse curve to eliminate repetitive grinding and polishing; that he did not collaborate with Johnson in reducing the idea to practice; that he did not personally disclose or discuss the invention underlying the '124 and '878 patents until the invention had been reduced to practice; and that Johnson did not discuss or collaborate in the conception or reduction to practice of the letters patent. Celestron, however, in its statement of material facts, denies Criterion's version of the facts and insists that other fact questions are pertinent such as whether conceptions by Johnson aided in reducing the invention to practice. It is evident to the Court, particularly upon examining the submitted depositions that the facts are not clear and convincing that Johnson was in-

correctly listed as a joint inventor.[1] The Court in reaching this conclusion, is aware that on a summary judgment motion "it must resolve all ambiguities and draw all reasonable inferences favorable to the party against whom summary judgment is sought ..." *Cali v. Eastern Airlines, Inc.,* 442 F.2d 65, 71 (2 Cir.1971) (citing *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

Even if the Court could hold, as a matter of law, that there was a misjoinder of inventors, the facts simply do not establish, in the present procedural posture of the case, that there was a *deceptive* misjoinder. It is settled law that:

> If undisputed evidentiary facts disclose competing material inferences as to which reasonable minds might disagree, the motion must be denied ... "This admonition should especially be kept in mind when the inferences which the parties seek to have drawn deal with questions of *motive, intent, and subjective feelings and reactions."*

*Cali,* 442 F.2d at 71 (quoting *Empire Electronics Co. v. United States,* 311 F.2d 175 (2 Cir.1962)) (emphasis added).

█ Ascertaining the existence of "deceptive intention" necessarily requires the Court to deal with the motive and intent of the patent applicants. The Court simply cannot determine from the submitted materials what the state of mind or motivation of the applicants was at the time the application was filed. Resolving all ambiguities and drawing all reasonable inferences in Celestron's favor, *Cali,* at 71, the Court is of the opinion that there are triable issues of material fact concerning intent.

This ruling, by necessity, also disposes of Criterion's argument that the letters patent are invalid as having been issued to an inventive entity which did not invent the patent.

## IV

Finally, the Court addresses Criterion's contention that claims 4–7 of the '124 patent and claims 13–16 of the '878 reissue patent are invalid for failure to point out and define the invention and for failure to provide a description meeting the requirements of 35 U.S.C. § 112.

> Section 112 provides in relevant part:
> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable *any person skilled in the art* to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.
> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 112 (emphasis added).

█ Sufficiency of the description of a claim is a question of fact. See *Refrigeration Patents Corp. v. Stewart Warner Corp.,* 159 F.2d 972, 975 (7 Cir.1947), cert. denied, 331 U.S. 834, 67 S.Ct. 1515, 91 L.Ed. 1847 (1947), reh. denied, 332 U.S. 803, 68 S.Ct. 90, 92 L.Ed. 382 (1947); *Bank v. Rauland Corp.,* 146 F.2d 19, 22 (7 Cir.1944); *Struthers Scientific and Int'l Corp. v. General Foods Corp.,* 314 F.Supp. 313, 315 (D.Del.1970). In the *Struthers* decision, the court refused to decide on a summary judgment motion whether the listed specifications fully dis-

1. The existence of a misjoinder of inventors is difficult to discover, particularly where, as in this case, the facts are ambiguous. As one court has stated on a summary judgment motion: "I find that this type of issue [misjoinder of inventors] under the law requires a heavy burden of proof and should also await trial for determination." *Johnson Foils, Inc. v. Huyck, Corp.,* 180 U.S.P.Q. 243, 245 (N.D.N.Y.1973). In determining the existence of "joint inventor-

ship" a number of factors can be important: The inventors' relationship, see, e.g., *Application of Searles,* 422 F.2d 431, 436 (C.C.P.A. 1970); the reduction of the idea to practice, *GAF Corp. v. Amchem Prod., Inc.,* 514 F.Supp. 943, 966 (E.D.Pa.1981), and the conception of the idea. *Mechmetals Corp. v. Telex Computer, Prod., Inc.,* 518 F.Supp. 243, 245 (C.D.Cal. 1981). There are unanswered questions as to all of these factors.

closed the process invented to one skilled in the art. The court reasoned that the specific question could not be answered without a full development of the state of the prior art. 314 F.Supp. at 315. The Court in this case finds itself in a similar situation. Celestron has submitted an affidavit by James C. Wyant, an associate professor of optics at the optical science center of the University of Arizona, which states that the drawings and specification of the '124 patent would have enabled a person of ordinary skill in the optical fabrication to make and use the invention claimed.[2] He also avers that one having ordinary skill in the art of optical fabrication would have understood, from the '124 patent, how to index the pieces used in making replica masters.[3] Criterion, has not submitted a counter-affidavit and the record is devoid of information sufficient for the Court to determine whether, to one skilled in the art, the '124 and '878 patents fail to point out and define the invention, and whether the description of the patents is inadequate.[4]

Accordingly, Criterion's motion for partial summary judgment on both the '124 patent and the '878 reissue patent is denied.

---

**2.** Affidavit of Professor James Wyant at 2 (Jan. 1977).

**3.** *Id.* at 3.

**4.** The Court notes at this point, that the '878 reissue patent raises no new issues. Claims 4–7 of the '124 patent appear in the reissue and claims 13–14 are dependent on claims 4–7.