709 F.2d 1287
 219 U.S.P.Q. 20
 MECHMETALS CORPORATION, a California corporation,
Mechmetaltronics, Inc., a California corporation,
Plaintiffs-Appellees,
v.
TELEX COMPUTER PRODUCTS, INC., an Oklahoma corporation,
Telex, Inc., a Delaware corporation, Daniel R.
O'Neill, an individual; and Gary
Bobleter, an individual,
Defendants-Appellants.
 No. 81-5781.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1982.
Decided July 5, 1983.
 
 J. Thomas Cairns, Jr., Nicholas & Cairns, Los Angeles, Cal., for plaintiffs-appellees.
 Gary D. Stabile, Mullen & Stabile, Los Angeles, Cal., for defendants-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER and NELSON, Circuit Judges, and EAST,* District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 Telex Computer Products, Inc., appeals from a declaratory judgment that Mechmetals Corp., the appellee, holds a "shop right" to produce a computer part that is the subject of a patent owned by Telex. Telex also appeals from the district court's refusal to enter findings on several state law issues raised by Mechmetals in its complaint and in the pretrial order. We reverse so much of the district court judgment as holds that Mechmetals has a shop right to produce the patented part. We affirm the district court's decision not to enter the findings requested by Telex.
 
 FACTS
 
 2
 Daniel O'Neill and Alan Painter, both electronics engineers, in 1975 conceived an improved design for a capstan, a device that accelerates the magnetic tape used to store information in computers. The capstan design called for a single-piece plastic part to be incorporated in a newly designed, improved-performance magnetic tape drive. To exploit this tape drive design commercially, O'Neill, Painter and others resigned from their former employment and created the Gulliver Technology Corporation.
 
 
 3
 While Gulliver employees O'Neill and Painter were highly familiar with computer tape drive designs, they possessed neither the skill nor the equipment necessary to produce the capstan part they had conceived. In order to investigate possible methods of manufacturing the capstan, O'Neill and Painter contacted George Glaeser, a machinist. Glaeser was president of Mechmetals Corp., a concern that specialized in manufacturing parts using a "mechmetal" process. O'Neill and Painter believed that the mechmetal process could provide a feasible technique for producing the necessary light, properly balanced, one-piece plastic capstan. Glaeser, after consideration, agreed and began working with O'Neill and Painter to perfect a technique for machining the capstan.
 
 
 4
 The trial court specifically found that throughout the period when Glaeser, O'Neill and Painter were collaborating on this project, "Mechmetals submitted billings to O'Neill, Painter and Gulliver Technology Corporation for materials and machine time used in making the capstan prototypes and was reimbursed for such billings."[1] Eventually a successful method for producing the capstan was developed. Four patents covering the design and production of the capstan part were ultimately issued in the names of Glaeser, Painter and O'Neill as co-inventors.
 
 
 5
 Glaeser, according to the uncontroverted evidence at trial, exercised virtually complete control over Mechmetals. Although he owned only a small proportion of the total shares of Mechmetaltronics, Inc., the parent of Mechmetals, Glaeser as corporate president exercised full authority over the operations of Mechmetals during the period in question. Glaeser's contract of employment with Mechmetals, the district court found, obligated him to recognize any "shop right" held by Mechmetals in any invention conceived or perfected by him during his term of employment.
 
 
 6
 In December, 1975, while the application for the basic capstan patent was still pending, Glaeser, Painter, and O'Neill each conveyed their ownership of rights in the pending patent to Gulliver Technology. All three executed written assignments of their entire interest in the invention. The assignment by Glaeser did not mention Mechmetals, nor did Glaeser obtain or seek to obtain authority to assign any right held by Mechmetals. The consideration for Glaeser's transfer of his interest in the patent to Gulliver Technology was a promise by Gulliver to purchase all of its requirements for patented capstans from Mechmetals.[2]
 
 
 7
 In January, 1977, Gulliver assigned its interest in the capstan patent to Telex Computer Products, Inc., a subsidiary of Telex Corp.,[3] as part of a sale by Gulliver of all assets. This secondary transfer of the patent was not contemplated by Glaeser at the time he assigned his interest in the patent to Gulliver. Telex did not consider itself bound by the Gulliver-Mechmetals capstan requirements contract. Telex continued to buy its requirements for capstans from Mechmetals only through May, 1979, when the business relationship between the two companies ended. This lawsuit ensued.
 
 COURSE OF PROCEEDINGS
 
 8
 On February 4, 1980, Mechmetals filed a complaint against Telex and other defendants.[4] In its first claim for relief, Mechmetals sought a declaratory judgment that as Glaeser's employer at the time he co-invented the capstan, it owns a "shop right," or non-exclusive license, to produce the patented part despite the facial exclusivity of the Telex patent. The second claim for relief stated a cause of action for breach of the Gulliver-Mechmetals requirements contract. The third claim for relief alleged unfair competition and theft of trade secrets by Telex.
 
 
 9
 Upon Telex's pretrial motion, the district court dismissed both the second and third claims for relief pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, declining to exercise pendent jurisdiction over these state law issues.[5] The district court further struck from the complaint the plaintiff's prayer for a declaration that the purported assignment of patent rights by Glaeser was void for failure of consideration or because of a mutual mistake of the parties respecting the Gulliver-Mechmetals requirements contract. Mechmetals later instituted an action in California state court incorporating most of these causes of action.
 
 
 10
 Despite these rulings, the pretrial conference order suggested that fraud and failure of consideration relating to the Glaeser patent assignment might still be at issue. One "issue of law" listed was "[w]hether Glaeser's assignment of rights in the capstan is void as having been procured by fraud." Another was "whether Glaeser's assignment of his interest in the capstan is void for failure of consideration." However, the pretrial order's description of the "nature of the action" stated only that the issue was whether Mechmetals held a shop right to produce the patented capstan, and did not mention any issue relating to ownership of the patent itself.
 
 
 11
 The case was tried before Chief Judge Andrew Hauk of the Central District of California. After trial, Judge Hauk ruled that Mechmetals was entitled to a shop right in the capstan patent. 518 F.Supp. at 245. He concluded, first, that Glaeser became a co-inventor of the capstan while employed by Mechmetals, and that Mechmetals thereby acquired an equitable shop right in the patent. Id. Next, the district court found that Glaeser did not intend to assign the Mechmetals shop right to Gulliver, lacked authority to make such an assignment, and therefore did not effectively assign the shop right to Gulliver. Id. at 245-46. For these reasons, the court declared Mechmetals to own a shop right to produce and sell the capstan. Id. at 246.
 
 
 12
 The district court did not make any findings regarding the fraud and failure of consideration "issues of law" listed in the pretrial order. When counsel for Telex requested the court to enter a finding that there was no fraud or failure of consideration that would void the patent transfer from Glaeser to Gulliver, counsel for Mechmetals, in response, asked the court not to enter such findings so that Mechmetals would not be collaterally estopped on the issues in the pending state court proceeding. The court ruled that the fraud and failure of consideration issues had not in fact been tried in the district court action. Citing the "rule that the court can change the pretrial order at any time," Judge Hauk ordered the stated fraud and failure of consideration issues stricken from the pretrial order. The court commented that although neither fraud nor failure of consideration had been proved, it would be unfair to create any preclusive effect in the state court action, since these issues had not in fact been tried in the federal action.
 
 
 13
 Telex now appeals from both the declaratory judgment that Mechmetals has a shop right in the patented capstan and the district court's refusal to enter findings on the fraud and failure of consideration issues.
 
 DISCUSSION
 
 14
 I. Shop Right.
 
 
 15
 A "shop right" is essentially an irrevocable, non-exclusive license that is acquired by an employer under certain circumstances to practice the invention of his employee. See P. Goldstein, Copyright, Patent, Trademark and Related State Doctrines 173 (2d ed. 1981). The shop right doctrine originated in American law in 1843, in the case of M'Clurg v. Kingsland, 42 U.S. (1 How.) 202, 11 L.Ed. 102 (1843). The doctrine was originated and perpetuated by the Supreme Court as an equitable principle of common law, even though the existence of shop rights potentially conflicts with federal patent statutes which purport to confer upon a patentee the exclusive right to practice his invention. See 35 U.S.C. Secs. 261, 271(a) (1976). The rule, succinctly stated, is that "where a servant, during his hours of employment, working with his master's materials and appliances, conceives and perfects an invention for which he obtains a patent, he must accord his master a non-exclusive right to practice the invention." United States v. Dubilier Condenser Corp., 289 U.S. 178, 188, 53 S.Ct. 554, 558, 77 L.Ed. 1114 (1933).
 
 
 16
 The Supreme Court developed the concept of shop right as a form of equitable compensation for situations where the employer has financed an employee's invention by providing wages, materials, tools, and a workplace.[6] A shop right also has some attributes similar to those of equitable estoppel. In particular, a shop right is most commonly found where the employee-inventor has induced the use of his invention by his employer or has acquiesced in such use over a period of time. See Francklyn v. Guilford Packing Co., 695 F.2d 1158, 1161 (9th Cir.1983); Kierulff v. Metropolitan Stevedore Co., 315 F.2d 839, 841 (9th Cir.1963). The combination of equitable concepts underlying the shop right doctrine was well explicated by the Court in Solomons v. United States:
 
 
 17
 [W]hen one is in the employ of another in a certain line of work, and devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employes to develop and put in practicable form his invention, and explicitly assents to the use by his employer of such invention, a jury, or a court trying the facts, is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from his use of the property, and the assistance of the co-employes of his employer, as to have given to such employer an irrevocable license to use such invention.
 
 
 18
 137 U.S. 342, 346, 11 S.Ct. 88, 89, 34 L.Ed. 667 (1890).
 
 
 19
 The district court ruled that a shop right in favor of Mechmetals was created by virtue of Glaeser's work in co-inventing the plastic capstan. This is a conclusion of law, subject to our independent review, Francklyn v. Guilford Packing Co., 695 F.2d 1158, 1160 (9th Cir.1983), although the findings of fact entered by the district court will be upheld unless clearly erroneous, id. We conclude that the district court's determination on this issue must be reversed, because on the uncontroverted facts as found by the district court, no shop right ever accrued to Mechmetals.
 
 
 20
 The district court incorrectly overlooked the precise nature of the relationship between Mechmetals and the three co-inventors of the capstan. O'Neill and Painter, the chief designers of the capstan, were not employees of Mechmetals at all. They approached Glaeser with their idea for the capstan in order to secure assistance in reducing the idea to practice. Glaeser, as president of Mechmetals, agreed to assist in the venture. This was a businesslike, negotiated transaction, not the type of informal understanding between an employer and employee present in cases where the Supreme Court has deemed it necessary to imply an equitable shop right. Cf. United States v. Dubilier Condenser Corp., 289 U.S. 178, 183-86, 53 S.Ct. 554, 555-57, 77 L.Ed. 1114 (1933) (shop right conceded where inventor was a research and development employee who conceived and perfected invention during working hours in employer's laboratory); Gill v. United States, 160 U.S. 426, 427 n. 1, 16 S.Ct. 322, 323, 40 L.Ed. 480 (1896) (shop right found where employee, a skilled machinist, invented device during working hours at employer's expense, and allowed employer to use patented invention for many years); see also Gill, 160 U.S. at 431-33, 16 S.Ct. at 324-25 (listing other, similar cases).
 
 
 21
 The only one of the three co-inventors who could properly be labeled a Mechmetals employee was Glaeser, and Glaeser was not an ordinary employee. He was president and chief executive officer of Mechmetals. In practice, he exercised virtually unchecked control over Mechmetals' corporate affairs. The normal situation in which a shop right is created is where a "servant uses his master's time, facilities and materials." See Dubilier Condenser Corp., 289 U.S. at 188, 53 S.Ct. at 557. To label Glaeser a "servant" of Mechmetals would ignore the true nature of his employment relation. Equity will not compel such a characterization. As we have recently observed, "[t]he full nature of the parties' relationship must be examined to determine whether a shop right exists." Francklyn, 695 F.2d at 1161.
 
 
 22
 The behavior of Glaeser, O'Neill and Painter relating to the capstan patent is not the sort of conduct that gives rise to an estoppel in favor of Mechmetals. Even before the patent was issued, the co-inventors met and reached agreement on an allocation of patent rights. The patent itself was to be owned in its entirety by Gulliver, the company of O'Neill and Painter. Glaeser's company, Mechmetals, was to receive a contract right to produce Gulliver's requirements of the patented capstans. Neither Glaeser nor the others believed that Mechmetals would be allowed to sell the capstan independently without paying royalties. This case is thus distinguished from Francklyn, where we ruled that an estoppel arising from acquiescence in the employer's practice of the patent supported the district court's finding of a shop right. See 695 F.2d at 1161. Moreover, neither Glaeser nor the others ignored the right of Mechmetals to receive some return on its contribution to the invention. The requirements contract was created for this purpose. Glaeser, as Mechmetals' president, could have insisted upon additional compensation in the form of a license allowing Mechmetals to produce and sell the capstan. He did not.
 
 
 23
 Very important in this case is the fact, found by the district court, that Mechmetals requested and received reimbursement from Gulliver for materials and machine time used in developing a method for producing the capstan. To declare a shop right for Mechmetals in this situation would deviate from the basic premise justifying the creation of shop rights: that the employer should receive a share in an invention he has financed. Use by the employee of the employer's tools and materials has always been considered a touchstone of a shop right. See, e.g., United States v. Dubilier Condenser Corp., 289 U.S. 178, 188, 53 S.Ct. 554, 557, 77 L.Ed. 1114 (1933); Francklyn v. Guilford Packing Co., 695 F.2d 1158, 1162 (9th Cir.1983). Since Gulliver paid for the materials and machine time used in developing the capstan product, Mechmetals did not accrue any shop right under the common law doctrine. Cf. Francklyn, 695 F.2d at 1162 (shop right upheld where patentee-employee received promise from employer to underwrite expenses and pay for materials). It is true that Mechmetals did not receive reimbursement for the time Glaeser spent working on the invention. But Glaeser was the chief executive officer of Mechmetals, not a regular employee, and we surmise that Glaeser's work was a product of his business judgment that a successful invention would result in advantageous economic transactions for the company. This speculative opportunity provided a form of return on the investment of Glaeser's time in the project. It does not provide a proper foundation for finding a shop right in Mechmetals.
 
 
 24
 Finally, considerations of federal patent policy militate against finding any shop right here. As the Supreme Court has observed, "[t]he only value that a patent has is the right that it extends to the patentee to exclude all others from making, using, or selling the invention for a certain period of years." Dubilier Condenser Corp., 289 U.S. at 202, 53 S.Ct. at 562. Patent transferees such as Gulliver are accorded protection by 35 U.S.C. Sec. 261 (1976), which states that "[a]n assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent Office within three months from its date or prior to the date of such subsequent purchase or mortgage." This statutory provision shows congressional intent to accord a heavy presumption that the record patentee or patentees can convey good and exclusive title to their inventions. The court-made shop right doctrine constitutes a nonstatutory exception to this presumption of exclusivity otherwise accorded persons who properly secure protection for their inventions under the patent laws. As such, the doctrine should be carefully confined to the type of situation for which it was created: where the inventor is an employee working at the employer's direction, and the invention is made possible by the employer's liberal, informal attitude toward on-the-job experimentation. Here, the inventor controlled the employing corporation, and the invention resulted from a negotiated transaction in which the employing corporation received appropriate consideration. The district court erred in concluding that Mechmetals acquired a shop right in the capstan invented under these circumstances.[7]
 
 
 25
 Because we reverse the threshold ruling that Mechmetals acquired a shop right in the capstan invention, we need not consider the other claims of error raised by Telex with respect to the district court's determination on this issue.
 
 
 26
 II. Refusal to Enter Findings.
 
 
 27
 Appellant Telex also challenges the district court's refusal to enter findings of fact in accordance with its opinion that no fraud or failure of consideration in the patent assignment transaction was proved by Mechmetals. Telex contends that these issues were present in the case by virtue of the pretrial order, and that the district court did not have discretion to refuse to enter findings on the issues.
 
 
 28
 Under Rule 16, the pretrial order "when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Fed.R.Civ.P. 16. Technically, inclusion of the fraud and failure of consideration issues in the pre-trial order reintroduced them into the action, even though the portions of the complaint raising these issues had earlier been dismissed. However, we cannot accept Telex's argument that the district judge lacked discretion to refuse to enter findings on these matters simply because they were listed as issues in the pretrial order.
 
 
 29
 A pretrial order is not an inexorable decree and may, under proper circumstances, be modified, even after trial. Jeffries v. United States, 477 F.2d 52, 55 (9th Cir.1973). Post-trial amendment to the pretrial order is a form of amendment to the pleadings, and as such, is specifically permitted by Fed.R.Civ.P. 15(b). See Wallin v. Fuller, 476 F.2d 1204, 1210 (5th Cir.1973); Monod v. Futura, Inc., 415 F.2d 1170, 1173-74 (10th Cir.1969); Deakyne v. Commissioners of Lewes, 416 F.2d 290, 297 n. 12 (3d Cir.1969); 6 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1527, at 612-13 (1971 ed.). We have held that it is proper for a district court to amend the pretrial order in a de facto fashion, without formal amendment, simply by entering findings. American Pipe & Steel Corp. v. Firestone Tire & Rubber Co., 292 F.2d 640, 643 (9th Cir.1961); see Interstate Plywood Sales Co. v. Interstate Container Corp., 331 F.2d 449, 452 (9th Cir.1964). The district court's decision to allow an amendment to the pretrial order after trial will be reversed only if it results in prejudice to one of the parties.[8] See Jeffries v. United States, 477 F.2d 52, 55 (9th Cir.1973); see also Bowles v. Wheeler, 152 F.2d 34, 42 (9th Cir.), cert. denied, 326 U.S. 775, 66 S.Ct. 265, 90 L.Ed. 468 (1945).
 
 
 30
 Telex maintains that it suffered prejudice as a result of the refusal to enter findings because it will now be forced to litigate the issues in the state court action filed by Mechmetals. The necessity to litigate the fraud and failure of consideration issues may indeed prove disadvantageous for Telex, but it does not constitute the type of "legal prejudice" that would preclude the district court's action. The Supreme Court has stated that "the mere prospect of a second lawsuit" is not the type of prejudice that should prevent the district court from granting voluntary dismissal without prejudice of an action under Fed.R.Civ.P. 41(a)(2). Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 217, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947); see Hamilton v. Firestone Tire & Rubber Co., 679 F.2d 143, 145 (9th Cir.1982); Kotzen v. Levine, 678 F.2d 140, 141 (11th Cir.1982). Logically, the same test should apply to post-trial amendment of the pleadings, including the pretrial order, that results in a dismissal without prejudice of some issues but not the entire action. Cf. Wilson v. Crouse-Hinds Co., 556 F.2d 870, 873 (8th Cir.) (suggesting that it is immaterial whether court acts pursuant to Rule 15(a) or Rule 41(a)(2)), cert. denied, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977).
 
 
 31
 No prejudice other than the threat of state court litigation has been cited by Telex. Telex does not claim that it expended significant effort in an attempt to defend the fraud and failure of consideration issues in district court. Rather, it appears that the parties informally agreed to remove these issues and to try them in state court. The purposes of Rule 16, to expedite litigation and prevent surprise during trial, would not have been served by the entry of findings on these issues. Cf. Perfection-Cobey Co. v. City Tank Corp., 597 F.2d 419, 420-21 (4th Cir.1979) (stating converse principle that where parties litigate issues not raised in pre-trial order, there is little policy reason to enforce pretrial elimination of issues). The record on the present appeal suggests the claims of fraud and failure of consideration asserted by Mechmetals are not frivolous. The district court therefore acted well within its discretion in refusing to enter such findings since the preclusive entry of findings on these issues could result in manifest injustice.
 
 
 32
 The judgment of the district court is AFFIRMED in part and REVERSED in part.
 
 
 
 *
 The Hon. William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Mechmetals Corp. v. Telex Computer Prods., Inc., 518 F.Supp. 243, 245 (C.D.Cal.1981)
 
 
 [2]
 Although termed by Gulliver a "service agreement," the arrangement is better characterized as a requirements contract. In a letter to Glaeser, O'Neill summarized the agreement as follows:
 "In consideration for assigning your rights to the capstan patents to Gulliver, Gulliver appoints you as sole supplier of capstans for Gulliver for its exclusive use."
 Complaint at Exhibit "B."
 
 
 [3]
 Defendant Telex Corp. was erroneously styled as "Telex, Inc." in the case caption drawn by the plaintiffs below
 
 
 [4]
 Telex Corp., Daniel R. O'Neill and Gary Bobleter were also named as defendants. The action against Telex Corp. was dismissed by stipulation, while the actions against the individual defendants were dismissed for lack of subject matter jurisdiction. Although the district court stated no reasons, apparently diversity jurisdiction could not be established by Mechmetals as to any of the defendants, even though such jurisdiction was alleged in the complaint. Mechmetals did not appeal from these dismissals
 
 
 [5]
 Plaintiff Mechmetals impliedly agreed that there was no jurisdictional basis for the court to decide these state law issues other than pendent jurisdiction
 
 
 [6]
 See, e.g., M'Clurg v. Kingsland, 42 U.S. (1 How.) 202, 205, 11 L.Ed. 102 (1843); Solomons v. United States, 137 U.S. 342, 346, 11 S.Ct. 88, 89, 34 L.Ed. 667 (1890); Lane & Bodley Co. v. Locke, 150 U.S. 193, 198-99, 14 S.Ct. 78, 79-80, 37 L.Ed. 1049 (1893); United States v. Dubilier Condenser Corp., 289 U.S. 178, 188-89, 53 S.Ct. 554, 557-58, 77 L.Ed. 1114 (1933)
 
 
 [7]
 The fact, found by the district court, that Glaeser had an employment contract with Mechmetals that "obligated him to recognize Mechmetals' shop right in any invention conceived or perfected by him during the term of his employment," 518 F.Supp. at 245, does not affect our result. Glaeser never assigned any of his patent rights to Mechmetals. Id. The contract provision means no more than that Glaeser was required to recognize any shop right independently created in Mechmetals under the common law. Since we here hold that as a matter of law, no shop right existed, there was no right that Glaeser was required to recognize
 
 
 [8]
 Campbell Indus. v. M/V Gemini, 619 F.2d 24 (9th Cir.1980), cited by appellant, is inapposite. That case sustained the district court's discretionary refusal to allow an amendment to the pretrial order. Id. at 27-28