967 F.2d 588
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Grant K. MACCOON, d/b/a Abacus Leasing; Grant Leasing, Can
Am Aviation Corp., Richard P. MacCoon, as trustee
of the G.M.M. Grant Trust, Plaintiffs-Appellees,
v.
BIRCHWOOD REALTY and Barrie M. Peterson, Defendants-Appellants.
 No. 90-56020.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 4, 1991.
Decided June 12, 1992.
 
 1
 Before SCHROEDER and KOZINSKI, Circuit Judges, and ORRICK,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 This breach of contract action involves the sale of an aircraft ("Aircraft") and certain technical data, production rights and tooling ("Property") from appellees, Grant K. MacCoon, an individual doing business as Abacus Leasing and Grant Leasing, Can Am Aviation Corporation, and Grant K. MacCoon and Richard P. MacCoon as Trustees of the G.M.M. Grant Trust (collectively "MacCoon"), to appellants Birchwood Realty Group, a Delaware corporation, and its President, Barrie M. Peterson (jointly "Peterson"). Peterson appeals from the district court's bench trial decision in favor of MacCoon. We affirm.
 
 I.
 A.
 
 4
 MacCoon owned the experimental Aircraft and Property. Skytrader Corporation leased the Aircraft with an option to buy and bought the Property. Skytrader paid MacCoon small amounts of cash and issued to MacCoon its promissory note for $1,200.000. Skytrader could not pay the note and, therefore, MacCoon looked for another purchaser and found Peterson.
 
 
 5
 On November 30, 1988, MacCoon granted Peterson an option to buy ("Option Agreement") the Aircraft and the Property by purchasing MacCoon's rights and interests under various agreements between MacCoon and Skytrader. Paragraph 8 of the Option Agreement provides: "Seller warrants that he has legal title and the right to sell or transfer items referenced in this option and sale agreement." ER 34.
 
 
 6
 On February 11, 1989, MacCoon entered in another agreement ("Sale Agreement") with Peterson for the sale of the Aircraft and Property for $1,300,000. The Sale Agreement superseded the Option Agreement. MacCoon refused to warrant his title to the Aircraft and the Property. The Sale Agreement provided, among other things, that MacCoon would tender an executed bill of sale for the Aircraft to the escrow holder for delivery to Peterson at the closing (which never occurred). MacCoon did deliver to the escrow holder a bill of sale on a form prescribed by the Federal Aviation Act containing the statement that "the undersigned owner(s) of the full legal and beneficial title of the aircraft described as follows...." ER 23. Because the closing never took place, the bill of sale was never delivered to Peterson. Thereafter, Skytrader went into bankruptcy. Peterson refused to make payments on the note, and MacCoon thereupon commenced this action against Peterson for breach of contract. Peterson answered and counterclaimed against MacCoon for breach of contract, fraud, rescission, and common counts.
 
 B.
 
 7
 The district court, stating that "the primary issue before the Court is whether the February 11 Sale Agreement contained a warranty of title," (ER 10) found that "MacCoon did not warrant that he had clear title to the aircraft and only warranted that he was selling Peterson whatever rights he possessed." ER 16, 17. The judgment of the district court held that "Plaintiffs are entitled to judgment against Defendants, and each of them, in the sum of $1,003,850, plus interest from October 30, 1989, to date of judgment at the rate of 7% per annum, their costs of suit, and their attorney fees incurred herein pursuant to paragraph 6.2 of the Sale Agreement...." ER 6. It is from this judgment that Peterson appeals.
 
 II.
 
 8
 Peterson's appeal claims that the district court (1) did not consider all relevant evidence as to whether MacCoon made express or implied warrants of title; (2) did not interpret and apply § 2312 of the California Commercial Code in determining that MacCoon did not warrant title in the Sale Agreement; (3) did not conduct a fair trial; and (4) failed to consider whether the Federal Aviation Act, 49 U.S.C. § 1403(c), preempts state statutes regulating the sale of aircraft. We deal with each of these issues seriatim.
 
 A.
 
 9
 The first issue raised was whether the district court failed to consider the express warranty of title in the bill of sale. The appeal on this issue is nothing more than a challenge to the district court's findings of fact under Rule 52(a) of the Federal Rules of Civil Procedure. A district court's findings of fact are reviewed under the clearly erroneous standard. Fed.R.Civ.P. 52(a). "Under this standard, we must accept the district court's findings ... unless upon review the court is left with the definite and firm conviction that a mistake has been committed." Meusy v. Montgomery Ward Life Ins. Co., 943 F.2d 1097, 1098 (9th Cir.1991).
 
 
 10
 Peterson claims the trial court failed to consider the recitation in the federally-required bill of sale form that the seller warranted title to all property involved in the sale. Although the bill of sale was incorporated by reference into the Sale Agreement, it was only to become effective upon delivery to Peterson, and that delivery was conditional upon MacCoon's warranty of title to both the Aircraft and the Property. There is no affirmative showing that the court failed to consider the bill of sale, and the court in its findings of fact and conclusions of law found that the "Sale Agreement did not include a warranty of title. Consequently, Peterson has breached the contract by not performing." ER 17.
 
 
 11
 Under California law, the parts of a contract that are "purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded." Cal.Civ.Code § 1651. Here, the bill of sale is a standard form that includes a warranty of title, while the Sale Agreement was a carefully negotiated document containing no warranty of title. Peterson contends that these documents are not "absolutely repugnant," and in some aspects they admittedly are not.[1] As to the crucial element, however, existence or exclusion of a warranty, they are in direct conflict and, accordingly, under California law, language in the negotiated document is given greater credence than language in the standard form of the bill of sale.
 
 B.
 
 12
 Peterson next argues that there was a statutory warranty of title, citing § 2312 of the California Commercial Code, which provides in relevant part:
 
 
 13
 (1) Subject to subdivision (2) there is in a contract for sale a warranty by the seller that
 
 
 14
 (a) The title conveyed shall be good, and its transfer rightful; and
 
 
 15
 (b) The goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.
 
 
 16
 (2) A warranty under subdivision (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have.
 
 
 17
 Peterson argues that the "specific language" prong of § 2312(2) is not satisfied because the court found that the Sale Agreement was ambiguous as to whether MacCoon gave Peterson a warranty of title. This is true based solely on a reading of the Sale Agreement. The court found the Sale Agreement ambiguous, which is why it turned to the extrinsic evidence to determine the parties' intentions. Because it appears that the court based its findings on other circumstances, Peterson's attempt to establish a lack of a suitably specific express disclaimer in the Sale Agreement itself does not go far enough.
 
 C.
 
 18
 Peterson's third argument is that the court violated his constitutional rights by failing to follow its pretrial order. Peterson characterizes the issue as one involving a legal question of constitutional law, but it is merely a challenge to the district court's actions in amending its pretrial order. Such actions are subject to an abuse of discretion standard. Mechmetals Corp. v. Telex Computer Products, Inc., 709 F.2d 1287, 1294 (9th Cir.1983).
 
 
 19
 While Peterson's claims on this issue are based in due process and the right to a fair trial, he does not cite authority on those points of law but rather refers to generic allegations of violation of constitutional rights. These arguments fail.
 
 
 20
 At the outset of the trial, the court found that a mutual mistake as to the ownership of the Aircraft existed at the time of contracting. Peterson claims this framed the issues and removed the question of warranty from the case. The court later ruled on the issue of warranty after accepting supplemental evidence from appellants.[2] While Peterson contends that the warranty issue was excised from the case and, thus, he had no opportunity to prepare a case on the issue, the court's amenability to supplemental briefing and the admission into evidence of the bill of sale, which Peterson claims was primary evidence of the warranty, demonstrates the court gave the parties adequate opportunity to address the issue. Peterson was not precluded from arguing the issue nor prejudiced in his presentation. The district court acted within its discretion in entertaining this issue:
 
 
 21
 A pretrial order is not an inexorable decree and may, under proper circumstances, be modified, even after trial.... [I]t is proper for a district court to amend the pretrial order in a de facto fashion, without formal amendment, simply by entering findings. The district court's decision to allow an amendment to the pretrial order after trial will be reversed only if it results in prejudice to one of the parties.
 
 
 22
 Id. (citations and footnote omitted). Here, the court "amended" the pretrial order to comply with the development in the case and in the interests of justice. Such a move is within the discretion of the trial court and Peterson makes no real showing of prejudice.
 
 D.
 
 23
 Finally, Peterson claims the Federal Aviation Act preempts the question of warranty of title, citing Philko Aviation, Inc. v. Shacket, 462 U.S. 406 (1983), which held that state laws allowing undocumented transfers of interests in aircraft to affect innocent third parties are preempted by the Act. This holding is not dispositive in this case. No state law allowing such transfer is at issue. Rather, the question before the district court was whether warranty of title had been provided in an otherwise documented transfer with a proper Federal Aviation Administration bill of sale completed and placed in escrow.[3] Basically, Peterson claims that because a transfer was involved, the bill of sale should be the only document considered in this case. Neither Philko nor any preemption doctrine compels such a result.
 
 
 24
 AFFIRMED.
 
 
 
 *
 Honorable William H. Orrick, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 For example, they both represent agreements for sale of the Aircraft and Property
 
 
 [2]
 After the second day of trial, the court determined that various additional issues, including warranty of title, had been addressed and might need further briefing. The court informed the parties it would take those items up when it reconvened, if the parties submitted additional arguments. This court notes Peterson had nineteen days to prepare additional arguments, which removes any potential for prejudice in Peterson's presentation of these issues
 
 
 [3]
 Because no transfer ever occurred, Peterson's challenge, if it had any merit, could be dismissed as not ripe