695 F.2d 1158
 217 U.S.P.Q. 317
 Gilbert W. FRANCKLYN, Plaintiff-Appellant/cross Appellee,
v.
GUILFORD PACKING COMPANY, John B. Lowman, Wilbur E. Harms &
Richmond G. Harms, Defendants-Appellees/cross Appellants.
 Nos. 81-3291, 81-3340.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 10, 1982.
Decided Jan. 4, 1983.
 
 David L. Garrison, Garrison & Associates, Seattle, Wash., for francklyn.
 Richard L. Phillips, Seattle, Wash., argued for Guilford Packing Co.; Charles E. Yates, Seattle, Wash., on brief.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT, SKOPIL and ALARCON, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Gilbert Francklyn appeals from that portion of the judgment of the district court denying relief for patent infringement.
 
 
 2
 We are asked to decide whether Francklyn's employer, Guilford Packing Company (Guilford) had a shop right allowing it to manufacture and use copies of Francklyn's patented invention. In addition, we are asked to determine whether Guilford could transfer its purported shop right through a sale and lease back arrangement to a third party named John Lowman, and thereby free Lowman from any obligation to pay royalties to Francklyn for Lowman's manufacture and use of a copy of Francklyn's invention. We hold that Guilford had a shop right to Guilford's invention. We hold further that the sale and lease back arrangement between Lowman and Guilford could not insulate Lowman from his legal duty to pay appropriate royalties to Francklyn.
 
 I. FACTS
 
 3
 Guilford has been in the fishing and fish processing business for a number of years. Francklyn was hired to harvest clams on beds leased by Guilford. Francklyn was paid on a piecework basis, and he was required to deliver all of his catch to Guilford. Guilford also owned the boat and harvester that Francklyn used in harvesting the clams. Although Francklyn's work schedule was flexible, Guilford expected him to harvest clams when the tide and weather permitted. In the interim periods Francklyn was to maintain the boat and harvester in good repair. At the end of each clamming season, Francklyn returned the boat and harvester to Guilford. The district court found that the arrangement between Guilford and Francklyn also contemplated that Francklyn would be making modifications to the clam harvester in an attempt to improve its performance; Guilford also agreed to reimburse Francklyn for expenses incurred in modifying the harvester.
 
 
 4
 Francklyn became dissatisfied with the operation of Guilford's harvester. Over a two-year period, while employed by Guilford, he perfected and completed a modified version of the harvester which he used on Guilford's clam boat, the LITTLE JERK. The district court found that much or all the early work in modifying the harvester was done at the Guilford Packing Company plant, with the company's tools. The district court also found that pursuant to their agreement, Guilford reimbursed Francklyn for all materials used to modify the harvester for which Francklyn asked payment, although at some point Francklyn unilaterally determined not to seek further reimbursement.
 
 
 5
 In 1969, Francklyn obtained a patent for the modified harvester. Francklyn told Wilbur Harms (appellee and officer of Guilford) that Guilford could use his harvester without paying royalties on the "Little Jerk or any other clam boat you may have...." The parties agree that Francklyn gave Guilford a royalty-free license to the harvester used on the LITTLE JERK.
 
 
 6
 In 1972, Guilford retired this boat and harvester. Subsequently, Guilford manufactured a second harvester, based on the Francklyn invention, and used it on a different boat, the SIDEWINDER. Francklyn now claims that Guilford's manufacture and use of this second harvester infringed his patent.
 
 
 7
 In 1968, Lowman's business partner, Carr, built a harvester which was owned by the partnership of Lowman and Carr. It is undisputed that the harvester infringed Francklyn's patented invention. In October, 1969, Francklyn sent Lowman a notice of infringement. Lowman and Carr consulted a patent attorney who advised them that Francklyn's patent was invalid and that even if it was valid, Guilford had a shop right to the patent. The attorney also advised Lowman and Carr that Guilford could utilize its shop right by buying the harvester from Lowman and Carr and leasing it back to them. Lowman and Carr then sold the harvester to Guilford and Guilford leased it back to them. Lowman continued to use the device in harvesting clams for Guilford. In February, 1975, Francklyn served Lowman with a second notice of infringement. Thereafter, this action was filed.
 
 II. ANALYSIS
 A. Standard of Review
 
 8
 The district court found that Guilford and its officers had a shop right to Francklyn's invention. The district court's finding of a shop right, as a question of law, is subject to our independent review. The findings of fact on which the district court based its conclusion, however, must be upheld unless they are clearly erroneous. Thousand Springs Trout Farms v. IML Freight, Inc., 558 F.2d 539, 542 (9th Cir.1977) (quoting Purer & Co. v. Aktiebolaget Addo, 410 F.2d 871, 878 (9th Cir.), cert. denied, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969)). In reviewing these findings we will view the evidence in the light most favorable to Guilford, the party who prevailed below. Id. The prevailing party must be given the benefit of all inferences that may reasonably be drawn from the evidence. Id.
 
 
 9
 The district court's determination that neither Lowman nor Guilford infringed Francklyn's patent when they entered into the sale and leaseback transaction is a question of law. As such, it is subject to our de novo review. See Bank of California, N.A. v. Opie, 663 F.2d 977, 979 (9th Cir.1981).
 
 B. Guilford's Shop Right
 
 10
 Francklyn argues that the court erred in finding that Guilford possessed shop rights in his invention. He argues, first, that his relationship to Guilford was that of an independent contractor rather than that of an employee, and that this fact precludes any finding that Guilford is entitled to shop rights. Secondly, he argues that he conceived and perfected his invention on his own time, with his own tools, and with materials he paid for primarily himself; he contends that as a matter of law Guilford is therefore not entitled to a shop right in his invention. We will discuss each of these contentions in turn.
 
 
 11
 Francklyn contends that Guilford could not acquire shop rights in his invention because he was not an employee of Guilford's. In our view, this reflects too narrow a view of the nature of a shop right.
 
 
 12
 This court has indicated that while a shop right generally arises out of an employer-employee relationship, it is not necessarily limited to such a relationship. Kierulff v. Metropolitan Stevedore Co., 315 F.2d 839, 842 (9th Cir.1963) (quoting GateWay, Inc. v. Hillgren, 82 F.Supp. 546, 555 (S.D.Cal.1949), aff'd per curiam, 181 F.2d 1010 (9th Cir.1950)). See Graham-White Sales Corp. v. Prime Mfg. Co., 237 F.Supp. 694, 702-03 (E.D.Wis.1964), aff'd per curiam, 343 F.2d 534 (7th Cir.1965); Kurt H. Volk, Inc. v. Foundation for Christian Living, 534 F.Supp. 1059, 1083-84 (S.D.N.Y.1982). But see Hobbs v. United States, 376 F.2d 488, 494-96 (5th Cir.1967). The full nature of the parties' relationship must be examined to determine whether a shop right exists, not merely whether that relationship is characterized as an employment or as an independent contractual arrangement.
 
 
 13
 As this court noted in Kierulff, the doctrine of the shop right is of equitable origin:
 
 
 14
 The principle involved is that where an inventor or owner of an invention acquiesces in the use of the invention by another, particularly where he induces and assists in such use without demand for compensation or other notice of restriction of the right to continue, he will be deemed to have vested the user with an irrevocable, equitable license to use the invention.
 
 
 15
 Kierulff v. Metropolitan Stevedore Co., 315 F.2d at 841 (quoting Gate-Way, Inc. v. Hillgren, 82 F.Supp. at 555) (emphasis added).
 
 
 16
 In this case, the factual findings made by the district court fully support the conclusion that Guilford acquired a shop right to Francklyn's invention broad enough to cover its manufacture and use of the second harvester. First, the district court found that Francklyn knew, after his patent was issued, that Guilford was utilizing his harvester on the SIDEWINDER; nevertheless, Francklyn did not seek royalties from Guilford or otherwise attempt to enforce his patent against it until he instituted this suit in 1975. Such a finding clearly supports the conclusion that Francklyn knowingly acquiesced in Guilford's manufacture and use of a copy of his invention on the SIDEWINDER.
 
 
 17
 Moreover, the findings of the district court support the conclusion that Francklyn induced Guilford to manufacture and use a copy of his invention on the SIDEWINDER. Francklyn testified at trial that he told Wilbur Harms "you will also be able to use the LITTLE JERK or any other clam boat that you may have free of any royalties as long as my patent is valid." Francklyn's testimony certainly supports the district court's finding that "Francklyn offered Guilford Packing Company free use of the LITTLE JERK or any other clam boat with the harvesting rig for the life of his patent without payment of royalties."[1] The district court also found that "Francklyn consistently told Wilbur and Richmond Harms that they could operate using the patented invention without payment of royalties."[2] These findings, supported by credible evidence, are not clearly erroneous, and fully support the ruling below. On the basis of both Francklyn's statements and his silence, Guilford could certainly have reasonably inferred, and apparently did infer, that Francklyn consented to its manufacture and use of his invention on the SIDEWINDER. Under these facts, the finding of a shop right was clearly correct.
 
 
 18
 Francklyn also argues that under United States v. Dubilier Condenser Corp., 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114 (1933), he is entitled as a matter of law to a finding that Guilford did not have a shop right in his invention. Again, we disagree.
 
 
 19
 According to Dubilier a shop right may arise where the conception and perfection of the invention occurs during the hours of employment and is accomplished while working with the employer's tools and appliances. United States v. Dubilier Condenser Corp., 289 U.S. 178 at 188, 53 S.Ct. 554 at 557 (1933). Here, the evidence adduced at trial supports the conclusion that Francklyn tested and perfected the modified harvester during his hours of work. Francklyn argues that the modifications were made on his own time, and not during his hours of employment, i.e., when he was actually harvesting clams. However, as noted earlier, the work agreement between Francklyn and Guilford contemplated that Francklyn would be making modifications to the harvester in an attempt to improve its performance; the time Francklyn spent modifying the harvester can therefore reasonably be considered as part of his work time. As Francklyn candidly stated at trial, "if it hadn't been for him [Wilbur Harms] I would never have had the opportunity to develop what I developed on the boat in the first place because I would never have had the job to do it." It is also apparent that Francklyn tested the modified harvester while he was harvesting clams for Guilford.
 
 
 20
 Francklyn also contends that the second aspect of the Dubilier test has not been met, since modifications to the harvester were not done with Guilford's materials or appliances. He bases his argument on the fact that the modifications took place at his boat house rather than at Guilford's factory, and that he used his own tools. The district court, however, found that early work on the modification of the harvester took place at Guilford's factory, with Guilford's tools. Moreover, Guilford presented evidence, and the district court found, that Guilford agreed to underwrite all expenses incurred by Francklyn in his modifications of the harvester. Indeed, Francklyn testified that during a May 27, 1975 deposition he had stated that "Mr. Harms told me that if I did anything to the machine [harvester], worked on it, he said that he would pay for the materials that I used and in hopes that we could come up with something that would make it work better, which he did up to a certain point." Francklyn thus conceded that Harms had offered to pay for materials, and that he had been reimbursed for at least a portion of his expenses. The court found that Francklyn unilaterally chose not to seek reimbursement for most of his expenses. Under these circumstances, Guilford's offer to pay for the expenses incurred in the modification of the harvester substantially complies with Dubilier's requirement that the employer supply materials and appliances necessary to perfect the inventions.
 
 
 21
 We conclude that the district court correctly found that Guilford had a shop right to Francklyn's invention broad enough to cover its manufacture and use of that invention.
 
 C. The Sale and Lease-Back Transaction
 
 22
 We must next decide whether a third party such as Lowman can avoid paying royalties to an inventor by selling an infringing device to the holder of a shop right, such as Guilford, and then leasing the device back from the holder of the right. We hold that a third party cannot evade liability for patent infringement pursuant to such a transaction.
 
 
 23
 The court below found that the harvester manufactured and used by Lowman applied the teachings of claims 3 and 6 of Francklyn's patent. The parties do not dispute this finding. Moreover, both prior and subsequent to the sale of the harvester to Guilford, Lowman had used that harvester to gather clams to sell to various fish processing plants, including Guilford's. It is therefore clear that Lowman's manufacture and use of this harvester would constitute an infringement of Francklyn's patent unless otherwise privileged. See 35 U.S.C. Section 271(a). The issue, then, is whether Lowman can evade liability for infringement by entering into a sale and lease back transaction with Guilford, the holder of a shop right to Francklyn's invention. We hold that he cannot.
 
 
 24
 As noted above, Guilford's shop right was broad enough to encompass the manufacture of Francklyn's invention. The sale and lease back of the device manufactured by Lowman, however, was an attempt by Guilford to assign its shop right to manufacture Francklyn's invention to Lowman. This it cannot do. It is a well established principle that a shop right is personal to the employer; it cannot be assigned or transferred by contract to a third person. See Pursche v. Atlas Scraper and Engineering Co., 300 F.2d 467, 485 (9th Cir.1961), cert. denied, 371 U.S. 911, 83 S.Ct. 251, 9 L.Ed.2d 170 (1962). See also Hapgood v. Hewitt, 119 U.S. 226, 233, 7 S.Ct. 193, 197, 30 L.Ed. 369 (1886). Annot., 61 A.L.R. 2nd 356, 407 (1958) (collecting cases).
 
 
 25
 The agreement between Guilford and Lowman could not affect Lowman's duty to pay royalties or damages to Francklyn for his infringement of Francklyn's patented invention. Guilford and Lowman could not contract between themselves to abrogate Lowman's duty to pay royalties to Francklyn.
 
 
 26
 We conclude that Guilford had a shop right to Francklyn's invention. That right is personal to Guilford. It cannot be transferred to Lowman to give him a defense to a claim of patent infringement based on his manufacture and use of a product which is a copy of Francklyn's invention.
 
 Guilford's Cross Appeal
 
 27
 Finally Guilford asserts that the district court should have awarded it costs as the prevailing party under Fed.R.Civ.P. 54(d).[3] Because we reverse the district court's judgment on the issue of infringement arising from the sale and lease back transaction, the court's order regarding costs is now moot. See Farmer v. Arabian American Oil Co., 379 U.S. 227, 233, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964).
 
 
 28
 The judgment is reversed and remanded for further proceedings consistent with the views expressed in this opinion and the law of the case. Each party to this appeal shall bear its own costs. Fed.R.App.P. 39.
 
 
 
 [1]
 Finding of Fact No. 91. See also Finding of Fact No. 28: "Mr. Francklyn recognized the role the Harmses had played in the changes made to the harvester and at one point told them that if the patent was issued, Guilford Packing Company would always be able to use the LITTLE JERK or any other clam boat with the harvesting free of any royalties
 
 
 [2]
 Finding of Fact No. 91
 
 
 [3]
 In its order of May 7, 1981, the district court indicated that it declined to award costs to defendants because the plaintiff had prevailed in part by establishing the validity of his patent. The court stated that "Under these circumstances the Court felt that each of the parties had prevailed on a portion of the case and therefore it would be unfair to award costs to the defendants or the plaintiff."