George Felix MOORE, Jr., Plaintiff,

v.

AMERICAN BARMAG CORPORATION, Barmag A.G., and Kay E. Schnaidt, Defendants.

No. C–C–87–0228–P.

United States District Court, W.D. North Carolina, Charlotte Division.

Sept. 2, 1988.

Daniel E. McConnell, Charlotte, N.C., for plaintiff.

John J. Barnhardt, III, Bell, Seltzer, Park & Gibson, Charlotte, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER, a suit for patent infringement, is before the Court on Defendants' Motion for summary judgment. It appears that oral argument on the motion is unnecessary, for the parties have briefed their positions well. Accordingly, the Court will decide the motion on the briefs and other papers filed with the Court.

Defendants' motion raises two broad issues: (1) whether Plaintiff must assign his patent to Defendant American Barmag Corporation ("ABC"), his employer, under the principles of patent law relating to inventions by employees; and (2) if Plaintiff is not required to assign his patent, whether Defendant ABC is entitled to a non-exclusive license to practice the invention under the "shop rights" doctrine. For the reasons stated herein, the Court holds that Defendants are not entitled to summary judgment under either theory, for genuine issues of material fact remain as to both.

## I. BACKGROUND

During the period of time pertinent to this case, Plaintiff worked for Defendant ABC as a "service engineer." Defendant Barmag, A.G. manufactures machinery for use in the textile industry. Defendant ABC is Barmag's American sales and service arm. Plaintiff agrees that his duties included "start up of texturing machines," "troubleshooting on texturing machines," "work[ing] on customer trials either at ABC or in customer's plant," and "report[ing] on customer trials either at ABC or in customer's plant," and "report[ing] to Service Manager." Plaintiff summarizes his duties as "start-up and adjustment services." A written job description produced by Defendants, which Plaintiff claims he did not see until after the events leading to this lawsuit had occurred, lists as additional duties of service engineers "design adaptations on certain machine parts" and "work within limits on other ABC Service related developments." Plaintiff claims that no one at ABC ever discussed these latter duties with him and, in fact, they were not part of his job. Specifically, Plaintiff claims that he was not employed to invent new machinery or methods.

The events which underlie this lawsuit occurred in October or November, 1983. The Court will relate the version most favorable to Plaintiff, who opposes summary judgment. Plaintiff claims that ABC's sales manager, Hahnen, asked Plaintiff to go to the Collins & Aikman ("C & A") plant in Graham, North Carolina and disclose to C & A an "idea" Hahnen had for altering the feed path on a yarn texturing machine. Plaintiff disputes that he was sent to C & A to solve a "problem" C & A was experiencing. Defendant ABC, however, claims that it sent Plaintiff to C & A to solve an overfeed problem.

At any rate, Plaintiff went to C & A and disclosed the idea that Hahnen had suggested. C & A rejected the idea. Plaintiff eventually returned to his hotel room where, in a state between waking and sleeping, he conceived of a novel way of feeding yarns through an air texturing machine which would greatly increase the speed at which quality yarn could be produced.

The next day, Plaintiff returned to C & A to try out his idea. Using parts from C & A, he altered a Barmag machine, owned by C & A, to implement his idea. The trial proved successful. It is undisputed that Defendant ABC paid for Plaintiff's hotel room and meals in Graham, and his travel expenses to and from Graham. C & A paid ABC for Plaintiff's services.

When he returned to ABC, Plaintiff inquired about compensation for his invention. His superior, Berger, told him that ABC or Barmag, A.G. might compensate him, although ABC had no policy for handling employee inventions. Plaintiff then disclosed his invention to ABC.

ABC's patent counsel prepared and filed an application for a U.S. patent on Plaintiff's invention. Plaintiff signed a declaration permitting ABC to file the application in Plaintiff's name, but refused to assign the patent to ABC or Barmag, A.G. ABC thereupon abandoned the application. Plaintiff obtained independent patent counsel, who prosecuted an application which resulted in the issuance of the patent in suit.

Plaintiff brought suit in May, 1987, eventually asserting ten claims for relief. These include patent infringement, inducement to infringe and contributory infringement, misappropriation of trade secrets, tortious conversion of property, tortious interference with contractual relations and with prospective economic advantage, negligence, and conspiracy to damage Plaintiff.

## II.  SUMMARY JUDGMENT

Fed.R.Civ.P. 56 provides for summary judgment in favor of a defendant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The facts and inferences to be taken therefrom must be viewed in the light most favorable to the moving party. *Ballinger v. North Carolina Agricultural Extension Service*, 815 F.2d 1001, 1004 (4th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987).

The question on a motion for summary judgment is similar to that on a motion for directed verdict or for judgment notwithstanding verdict: whether a reasonable factfinder could return a verdict for the party opposing the motion on the basis of the evidence presented. *Anderson v. Lib-*

*erty Lobby,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The inquiry on summary judgment includes assessment of the evidence in light of the evidentiary burden each party will bear at the trial. *Id.* Where Plaintiff must prove his case by a preponderance of the evidence, it must be apparent on summary judgment that Plaintiff will be able to present evidence at trial sufficient to allow a reasonable jury to find that Plaintiff has proved his case by a preponderance.

## III.  EMPLOYEE AS INVENTOR

One employed to make an invention, who succeeds, during his term of service, in accomplishing that task, is bound to assign to his employer any patent obtained. The reason is that he has only produced that which he was employed to invent. His invention is the precise subject of the contract of employment. A term of the agreement necessarily is that what he is paid to produce belongs to his paymaster.

*United States v. Dubilier Condenser Corp.,* 289 U.S. 178, 187, 53 S.Ct. 554, 557, 77 L.Ed. 1114 (1933). Defendant urges that invention of a method or device to make Barmag machines fit customers' purposes was one of Plaintiff's duties, either in general or in the particular case of Plaintiff's visit to Collins and Aikman. Whether an employee was "hired to invent" is a question of fact. *Forberg v. Servel, Inc.,* 88 F.Supp. 503, 509 (S.D.N.Y.1949).

In deciding whether an employee was hired to invent, the Court must keep in mind the fundamental nature of an invention,

which consists neither in finding out the laws of nature, nor in fruitful research as to the operation of natural laws, but in discovering how those laws may be utilized or applied for some beneficial purpose, by a process, a device or a machine. It is the result of an inventive act, the birth of an idea and its reduction to practice; the product of original thought....

Though the mental concept is embodied or realized in a mechanism or a physical

or chemical aggregate, the embodiment is not the invention and is not the subject of a patent. This distinction between the idea and its application in practice is the basis of the rule that employment merely to design or to construct or to devise methods of manufacture is not the same as employment to invent.

*Dubilier Condenser Corp.*, 289 U.S. at 188, 53 S.Ct. at 557–58.

Comparison of cases in which the employer was found to possess an equitable right to ownership of a patent with cases in which no such right was found helps to clarify the distinction made in *Dubilier Condenser*. In *Forberg*, 88 F.Supp. at 503, the employee originally was hired as a "testing engineer, making performance and efficiency tests on all kinds of gas appliances." 88 F.Supp. at 505. The court found that he was not hired to invent at first, but that, when the employer ordered the employee to "concentrate on reducing service costs on the refrigerators and to do something to eliminate the combustion trouble" which had plagued the appliances, the employee, in essence, had been instructed to invent a solution to the problem. He thus "became employed to make an invention, if an invention would solve the problem, even though he had not been so employed originally.... Having been so employed, his invention became the property of his employer and he was bound to assign it, and any patent obtained thereon, to his employer." *Id.* at 509. The *Forberg* case is the situation the Third Circuit had in mind when it said, "if the employee is hired to invent, *or is assigned the duty of devoting his efforts to a particular problem,* the resulting invention belongs to the employer." *Marshall v. Colgate-Palmolive-Peet Co.*, 175 F.2d 215, 217 (3d Cir.1949) (emph. added). *See also Houghton v. United States*, 23 F.2d 386, 388–89 (4th Cir.1928) (employer entitled to patent where employee "relieved of other work" and sent to new location specifically to conduct experiments to make a nerve gas).

In *North American Philips Co. v. Brownshield*, 111 F.Supp. 762 (S.D.N.Y. 1953), the employee "was engaged and paid to make specific improvements to the assembly.... [H]e together with others was ordered to develop the loop [antenna assembly] to meet specifications." *Id.* at 765. The court found that the employee had a duty under these circumstances to assign to the employer any patent on his invention.

In contrast to these situations where the employee was specifically instructed to solve a particular problem, other cases turn upon the fact that invention, though related to the employee's job, was not a part of it. In *Dubilier Condenser*, the employee-inventors had been assigned to invent one thing, but took it upon themselves to go further and create solutions for other, related problems. The Supreme Court affirmed the Third Circuit's holding that the government was not entitled to an assignment of the patents on the inventions made on the employees' own initiative. 289 U.S. at 209, 53 S.Ct. at 565.

■ The Ninth Circuit addressed a case which is particularly instructive here. *Francklyn v. Guilford Packing Co.*, 695 F.2d 1158 (9th Cir.1983), involved an inventor who was not a classic employee, but whom the court treated as an employee for purposes of analyzing the employer's rights in the patent. Francklyn harvested clams on a piecework basis for Guilford. In so doing he used a boat with a harvester, which Guilford owned. "[T]he work agreement between Francklyn and Guilford contemplated that Francklyn would be making modifications to the harvester in an attempt to improve its performance...." *Id.* at 1162. Francklyn succeeded in improving the harvester. The Court did not even address the "hired to invent" issue, but assumed that the employer rightly owned the patent on his improved harvester. Plaintiff's evidence here tends to show that, as in *Francklyn*, Plaintiff was expected to service machines and to modify them to meet the customer's needs, but was neither hired nor assigned to *invent* a new feed path for yarn. Invention was the province of Barmag, A.G.'s research and development arm, not its sales and service arm. No doubt Defendants were pleased

when other employees assigned patents in their inventions to Defendants, but the fact that everyone else gave away their rights to their inventions does not mean that Defendants are entitled to demand such concessions. A genuine issue remains concerning Plaintiff's assignment at Collins and Aikman.

### IV. SHOP RIGHTS DOCTRINE

*Dubilier Condenser Corp.* also defined the shop rights doctrine in patent law: "[t]he so-called shop-right ... is that where a servant, during his hours of employment, working with his master's materials and appliances, conceives and perfects an invention for which he obtains a patent, he must accord his master a non-exclusive right to practice the invention." 289 U.S. at 188, 53 S.Ct. at 558. This Court need not go beyond the definition to determine that a genuine issue of material fact exists. Defendants contend that Plaintiff used their "materials and appliances;" Plaintiff contends he used those of Collins and Aikman. On the state of the record at this juncture, either view is plausible.

NOW, THEREFORE, IT IS ORDERED that Defendants' Motion for summary judgment is DENIED.